**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Case No. 10-10417-JLT

```
_____
                                )
SUZETTE McKENNA,                )
                                )
             Plaintiff          )
                                )
                                )
                                )
WELLS FARGO BANK, N.A.,         )
                                )
             Defendant.         )
_____)
```

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Now comes the Plaintiff, Suzette McKenna, ("Ms. McKenna"), who respectfully submits this Memorandum of Law In support of her Motion In Opposition to the Defendant's Motion to Dismiss.

**INTRODUCTION**

As a preliminary matter, Ms. McKenna would like to specifically point to the fact that Defendant's counsel purposely ignores the fact that it is **_not_** representing <u>Wells Fargo Bank, N.A.</u> in this transaction, but rather represents a completely separate corporate entity, <u>Wells Fargo Home Mortgage</u>, who unlike Wells Fargo Bank, N.A., primarily is a "mortgage servicing company", not the originating "lender" in this mortgage transaction. Under information and belief, Defendant seeks to deceive this court as to the true Plaintiff in this action, as

the loan in question before this court is what is known as a "securitized mortgage loan". Wells Fargo Bank, N.A. is one of the largest "wholesale" originating lenders in the United States. A wholesale lender, originates loans to be sold into the secondary market, however usually retains the rights to "service" the borrowers mortgage. Additionally, when a mortgage is "securitized", the mortgage (security instrument) remains in the originating lenders name, while off record assignments are made of the borrower's mortgage obligation. Compounding the opacity in these mortgage transactions, there is no record of the transfers of the borrower's Note. As a result of this shell game being perpetrated upon consumers, Ms. McKenna is left without any ability to identify the true entity that is trying to remove her from her home. Without this knowledge how could Ms. McKenna ever reach an agreement with the "Lender" in this transaction? Wells Fargo Home Mortgage (the entity brining this action on behalf of an undisclosed principal), has steadfastly refused to identify the **current** principal in this matter, and under information and belief seeks to deceive this court as to the true identity of the Defendant

Defendant correctly states, as it must for the purposes of this Rule 12 Motion, accepts Plaintiff's well pleaded factual allegations set forth in her complaint as true. Defendant's arguments against Ms. McKenna's well pleaded factual statements based upon their veracity can be grouped into three broad categories, Wells Fargo Bank, N.A. has the legal authority to

foreclose, Ms. McKenna has no basis for her rescission claim, and is time barred, and Ms. McKenna is substantively, and procedurally stopped from advancing a G.L. c.93A claim. Ms. McKenna will address each of Defendant's misplaced arguments in The balance of this Memorandum.

**ARGUMENT**

I. **Wells Fargo Mortgage Lacks the Legal Authority to Foreclose Count IV of Ms. McKenna's Complaint**

It is apparent that Defendant's counsel is accustomed to facing either unrepresented pro se litigants, or even more sadly, bankruptcy attorneys who fail to grasp the depth, complexity, and opacity of the securitized mortgage lending industry. The lack of any meaningful defense to the mortgage servicing industry counsel's foreclosure actions has left the public with the lending industry subjective view of Massachusetts foreclosure law. These subjective views have seemingly been imprinted upon various court decisions in the Commonwealth.

<u>Under 15 U.S.C. 1641(f) (2), Rule 11</u>, <u>**as well as the pains and penalties of perjury**</u>, Ms. McKenna directly queries, and demands that Defendant's counsel (as counsel for a mortgage servicer), state <u>**the exact name**</u> of the corporate entity that is the purported "owner" of her loan, and that has retained Wells Fargo Home Mortgage to service the McKenna loan. Ms. McKenna has

repeatedly asked Defendant for this information, and in writing[1]. Tellingly, to date, these requests have been rebuffed.

Based upon the pleadings in the state court action in this case, prior to removal to this court by Defendant, all of the pleadings submitted reference <u>"Wells Fargo Home Mortgage"</u> (a mortgage servicing corporation engaged in the **service** of "securitized loans", **_not_** Wells Fargo Bank, N.A, the originating lending institution in this transaction. Notably, in Defendants Motion to Dismiss, it intentionally uses vague language referring to "Wells Fargo", purposely obfuscating the distinction between Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage (companies with wholly different corporate purposes).

### A.   Mortgage Foreclosure In Massachusetts Under G.L. c. 244 § 14

Prior the discussion of the requirements of the Massachusetts foreclosure statute, it is instructive to review the fact that what is colloquially known as a "mortgage" actually consists of two completely separate components, (1) the borrower's promise to repay a debt, evidenced by a promissory note, and (2) a separate contract bargained for between the borrower and the lender whereby the borrower agrees that upon the default of the underlying debt, the "lender" can exercise its right under the power of sale clause contained within the security agreement (mortgage) to seize and auction the borrower's

---

[1] See Plaintiff's complaint at Exhibit A, page 3, at footnote

home **in order to satisfy the underlying debt**. Each component is governed by different rules; the borrower's promissory Note is governed by **Article 3 of the Uniform Commercial Code, and codified in Massachusetts under G.L. c. 106**. The borrower's security contract (mortgage) is governed by **traditional contract rules**, such as mutuality of assent, bargained for consideration, offer and acceptance. Therefore the common misnomer is that "the mortgage follows the Note". If the security instrument is not properly perfected the holder of the Note holds an unsecured obligation, **while the holder of only the mortgage suffers a much harsher fate, this entity is the holder of a worthless piece of paper, as it is "security for nothing"**. Accordingly any assignment of the rights to third parties under a negotiable instrument (borrower's Note) and the assignment of the right to enforce the power of sale in the borrower's mortgage contract operate under completely different rules.

Massachusetts is what is known as a "non-judicial" foreclosure jurisdiction. Non Judicial foreclosure operates solely as a matter of contract law (contained within the borrower's security agreement)., in that the borrower and the "lender" entered into a separate legal agreement that upon the borrower's **default on the underlying debt obligation**, the "lender" is allowed to exercise the power of sale clause bargained for between the parties to seize and auction the home to satisfy the underlying debt. Because of this phenomenon, it is imperative for

the foreclosing entity to strictly follow the requirements of G.L. c. 244 § 14. "It is familiar law that one who sells under a power of sale must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." Bottomly v. Krabachnick 13 Mass. App. Ct. 480, 484 (1982). The Bottomly court ruled that the failure to name the "holder" of the mortgage (with the right to enforce the power of sale) at the time of publication of the notice of sale of the borrowers home, did not comply with the strict requirements of G.L. c. 244 §14, and therefore the auction sale was found to be wholly void, and as if it had never happened at all.

The foreclosure statutes and foreclosure in general, presents a daunting myriad of convoluted, and sometimes esoteric and obscure provisions. To further add to complexity and opacity to mortgage transactions, when a borrower's mortgage has been securitized, secondary mortgage market complexities are inlaid upon this already confusing morass. It is largely due to the complexity of subject, coupled with the fact that the few challenges to foreclosure comes from either legally unsophisticated pro se litigants, or even more sadly from bankruptcy attorneys who lack the ability to fully grasp the depth, complexity, and enormity of this highly complicated subject, that the mortgage servicing industry and the undisclosed principals they represent, have been allowed to place their legally deficient imprimatur on Massachusetts foreclosure law. Currently, the Massachusetts Supreme Judicial Court is

entertaining a case before that court that may change the Massachusetts judicial handling of the foreclosure process[2]. Due to the fact that defense to mortgage foreclosure cases are e.

   As Defendant's Memorandum illustrates, common misnomer is that the Massachusetts statutes do not require a foreclosing entity to possess a borrowers Note in order to exercise the power of sale in the borrower's mortgage contract. When one stops and carefully considers the absurdity of that statement, one can begin to see the foreclosure bar's "imprimatur" upon the legal community. Defendant attempts to bootstrap its legally deficient reading of the Massachusetts foreclosure statute by citing to Valerio v. U.S. Bank, N.A., 1:10-cv-10-10529-NMG, Slip. Op. at. 10 (D. Mass. 2010) (Gorton, J.). This action was a preliminary injunction hearing, defended by Attorney David Fialkow of the same law firm representing Defendant, in which a Judge does not delve too deeply into the merits of the case. More importantly in this decision Judge Gorton cited specifically to the fact that because the moving party failed to cite to any authority that indicates that a Note be considered in foreclosure actions, Judge Gorton (with all due respect) wrongfully extrapolated that the Massachusetts foreclosure statutes do not address Note holders.

   As will be clearly stated in this Memorandum, which will be replete with extensive Massachusetts case law citation as indicia, discussion of the mortgage contract, as well as the discussion of the statutory condition in Massachusetts statutory

---

[2] See: U.S. Bank, N.A. v. Ibanez, SJC Docket No.  SJC-10694, Plaintiff's counsel is representing the LaRace family in this action, which is scheduled for oral argument on October 7, 2010.

law, Plaintiff's case before this court, presents a complete

distinction from the facts and "holding" of <u>Valerio</u>

### A. The Massachusetts Statutes Regarding Foreclosure Under The Power of Sale Are Based Upon "Breach of Condition

Over 175 years of Massachusetts case law regarding mortgage

foreclosure illustrates the *fact* that where a mortgage is given

as security for a promise to repay an advance of money (as is

this case before this court), the mortgage is to be construed in

conjunction with the underlying obligation. *"In a mortgage, the*

*Note is the primary document, and the mortgage itself is only the*

*security for the payment of the Note"* §9.3 Eno & Hovey, 28

Massachusetts Practice: Real Estate Law. It is axiomatic that the

mortgage follows the Note, however even this statement has

limitations if the security instrument (mortgage) is unperfected,

or if the underlying Note is obtained by an assignee without

supplying consideration (value).

Indeed, Massachusetts courts have long found that the Note

is the principal document and that the mortgage is only evidence

of the indebtedness. *"In determining the rights of the plaintiff,*

*the Note and mortgage are to be construed together"* <u>Strong v.</u>

<u>Jackson</u> 123 Mass. 60, 64. In <u>U.S. Trust Co. v. Commonwealth</u>, 245

Mass. 75, 78, the court stated *"The debt is the principal*

*thing and the mortgage an incident."*

While Massachusetts is a title theory state, and a transfer

of mortgage is technically a transfer of an interest in property,

Massachusetts courts have consistently stated that an assignment

of a mortgage is *qualified*. *"It is true that a mortgage on real estate has the inherent characteristics of real estate, but it is a conveyance of real estate or of some interest therein defeasible upon the payment of money or the performance of some other condition."* <u>Merritt v. Harris</u>, 102 Mass. 326, Further, the Massachusetts courts have found that the effectiveness of an assignment of mortgage is linked to the existence of the *underlying debt, "[the mortgage] is a title as collateral security for the mortgage debt, if the debt was not in existence, the assignee could take. under any circumstances. at most a naked legal title to the mortgage."* <u>Morris v. Bacon</u>, 123 Mass. 58, 59, See also <u>Kaufman v. Federal National Bank of Boston</u>, 287 Mass. 97, 100-101.

Defendant makes the preposterous statement that the Massachusetts "foreclosure statues" indisputably cloaks Defendant with standing to foreclose. This stems from Defendant's superficially deficient reading of Massachusetts statutory requirements, and or its willfully blind ignorance of 175 years of Massachusetts case law, as well as ignoring the rules of basic contract law.

Specifically, at page 7 of Defendant's Motion to Dismiss, Defendant's counsel eloquently recites G.L. c. 244 § 14, concentrating only on topic of *"the person authorized by a power of sale"*. Defendant's counsel fails to see (or discuss) the fact that as a condition precedent to enforcing the power of sale, that person has to actually be "authorized" (which will be discussed further below), but also that G.L. c. 244 § 14 requires

that the power of sale in a mortgage contract only becomes operative **_upon breach of condition_** in the bargained for "conditions" between the parties to the mortgage contract.

   As the exercise of the power of sale is strictly governed by contract, under Massachusetts law, a mortgagee need only make reference to "the Statutory Condition", to provide the mortgagor notice of the **precise conditions** in a mortgage contract, the breach thereof, which trigger the right of the mortgagee to enforce the power of sale as against the borrower. *"The Statutory Condition requires a mortgagee to repay principal and interest and to perform any obligation **contained in the Note** and the mortgage"* §9.6 Eno & Hovey, 28 Massachusetts Practice: Real Estate Law G.L. c. 183 § 20 states:

Section 20. The following "condition" shall be known as the "Statutory Condition", and may be incorporated in any mortgage by reference:

(CONDITION)

          Provided, nevertheless, except as otherwise
          specifically stated in the mortgage, that if
          the mortgagor, or his heirs, executors,
          administrators, successors or assigns shall
          pay unto the mortgagee or his executors,
          administrators or assigns the principal and
          interest secured by the mortgage, and shall
          perform any obligation secured at the time
          provided in the note, mortgage or other
          instrument or any extension thereof and shall
          perform the condition of any prior mortgage,
          and until such payment and performance shall
          pay when due and payable all taxes, charges
          and assessments to whomsoever and whenever
          laid or assessed, whether on the mortgaged
          premises or on any interest therein or on the
          debt or obligation secured thereby; shall
          keep the buildings on said premises insured
          against fire in a sum not less than the

amount secured by the mortgage or as
otherwise provided therein for insurance for
the benefit of the mortgagee and his
executors, administrators and assigns, in
such form and at such insurance offices as
they shall approve, and, at least two days
before the expiration of any policy on said
premises, shall deliver to him or them a new
and sufficient policy to take the place of
the one so expiring, and shall not commit or
suffer any strip or waste of the mortgaged
premises or any breach of any covenant
contained in the mortgage or in any prior
mortgage, then the mortgage deed, as also the
mortgage note or notes, shall be void.

Clearly, G.L. c. 183 § 20 also provides the right to allow a mortgagee to specifically state the specific conditions in an individual's mortgage contract that the parties bargained for in the transaction. Turning to the specific Power of Sale Clause in Ms. McKenna's mortgage contract, it states the following at paragraph 22:

> **22. <u>Acceleration Remedies</u>.**
> Lender shall give notice to Borrower Prior
> to acceleration following Borrower'. <u>breach
> of any covenant or agreement In this
> Security Instrument</u> (but not prior to
> acceleration under Section 18 unless
> Applicable law provides otherwise). The
> notice shall specify: (a) the default; (b)
> the action required to cure the default;
> (c) a date. not less than 30 days from the
> date the notice Is given to Borrower, by
> which the default must be cured; and (d)
> that failure to cure the default on or
> before the date specified in the notice may
> result In acceleration of the sums secured
> by this Security Instrument and sale before
> the date specified in the notice, The
> notice shall further Inform the Borrower of
> the right to reinstate after acceleration
> and the right to bring a court action to
> assert the non-existence of a default or
> any other defense of Borrower of
> acceleration and sale. It the default is
> not cured on or before the date specified

in the notice Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without fut1her demand and may invoke the **STATUTORY POWER OF SALE** and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, Including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Therefore, Ms. McKenna's mortgage contract (which was bargained for between the McKenna's and Wells Fargo Bank, N.A.), specifically states that the Power of Sale can *__only__* be exercised (by Wells Fargo Bank, N.A.) upon breach of the specific listed conditions in the McKenna mortgage contract. The only condition which Defendant claims Ms. McKenna is in breach of is the default on the underlying promissory note. Therefore, Defendant is required to proffer evidence that it is in fact in physical possession of Ms. McKenna's promissory note, with the right to enforce its terms,

Further, Defendant has failed to indicate how Wells Fargo Home Mortgage has any contractual privity with Ms. McKenna to have received any assignment of such right, or in the alternative, who, if anyone, is the real party in interest under Federal Rule of Procedure Rule 17(a)."*Indeed, the right to foreclose, by sale, by peaceable entry, or otherwise arises only if the underlying debt has not been paid see G.L.* c. 183§ *20, 21, G.L.* c. 244 §§ 1, 2, <u>Santiago v. Alba Management, Inc</u>. and another No. 09-P-578 (Mass. App Ct.(2009).

It would be anomalous, to say the least, for a foreclosure to go forward on Ms. McKenna's' primary residence without a determination whether, in fact, the Defendant (under information and belief an undisclosed assignee of the Lender) actually has right to payment on Ms. McKenna's' Note.

### B.  Uniform Commercial Code

A holder of a promissory Note means the person in *"physical possession"* of a negotiable instrument that is either payable to bearer or an identified person that is in possession. Mass. G.L. c. 106 § 1-201(20). To qualify as a negotiable instrument, a promissory Note must contain an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise, if it is (1) payable to bearer or order at the time it is first issued or first comes into possession of a holder; (2) is payable on demand or at a definite time, and (3) does not state any other undertaking or instruction by the person promising payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor. Mass. G.L. c. 106 § 3- 104(a)

*"Holder status would not confer on Defendant simply because the Plaintiffs' Note is a negotiable instrument.* The McKenna Note proffered by Defendant by Wells Fargo Home Mortgage's counsel, is

made specifically payable to Wells Fargo Bank, N.A. Under
information and belief, Ms. McKenna states that her note and
mortgage was assigned by Wells Fargo Bank, N.A. into a
securitized trust. To rebut Ms. McKenna's claim, she respectfully
requests that Defendant proffer evidence that it is in possession
of Ms. McKenna's Note. This court should take note of Defendants
extreme reluctance to produce the original McKenna Note, as under
information and belief, Defendant is without possession of the
original document.

### C. Under Information and Belief, Wells Fargo Bank, N.A. Assigned the Ownership of the McKenna Note

When confronted with an issue where a transfer of a Note
that is "order paper", (as is the case here due to the fact
Defendant has proffered a Note specifically made out to Wells
Fargo Bank, N.A.), Massachusetts courts have opined, *"Article 3
provides that where a negotiable instrument is payable to an
identified person, the transfer of the ownership of the
instrument requires endorsement by the holder. and transfer of
possession of the instrument.* In Re: Gavin, 319 B.R. 27, 31
(quoting G.L. c. 106 § 3-201). *"Article 3 also provides that an
instrument is "transferred" when it is delivered by the Holder
for the purpose of giving the recipient the right to enforce the
instrument."* Gavin at 31 (quoting G.L. c. 106 § 3-203(a». *"Proper
transfer of the instrument vests in the recipient any rights of
the transferor to enforce the instrument".* Gavin at 31 (quoting

G.L. c. 106 § 3-203(b», *and the transferor cannot transfer greater enforcement rights than it holds"* (See *Id.*).

In <u>Gavin</u> there was a question as to a Note specifically indorsed to Fleet, which was being sought to be enforced by a subsequent transferee. *"With the Note in question payable to Fleet, any assignment of ownership of the Note requires transfer of possession of the physical Note."* Gavin at 32. The Gavin court went on to explain that there may be relief or savings clause under Article 3 for a creditor not currently in possession of properly endorsed Note. (Quoting G.L. c. 106 § 3-309).

"*Specifically, Article 3 provides that a person who is not in possession of the instrument may nonetheless enforce it,* if the instrument has been lost, destroyed, or stolen, and: (i) *the person was in possession of the instrument and entitled to enforce it when loss of possession occurred.* (ii) The loss of possession was not the result of a transfer by the person or a lawful seizure of the instrument, and ;(iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in wrongful possession of an unknown person

*"A person seeking to enforce rights under a lost instrument must prove the terms of the instrument and the person's right to enforce it (quoting* G.L. c. 106 § 3-309(b», *and a court may not enter judgment in favor of the person seeking enforcement unless it finds that the person obligated to pay the instrument is adequately protected against loss that might occur due to a claim by another party seeking to enforce the instrument".* (Id.).

The Gavin court found that the Assignee seeking to enforce the terms of the Note, (Premier) had produced the original Note made payable to the originator (Fleet Bank), and also had produced the subsequent assignment of the Note by Sovereign to Premier. *However, Premier failed to provide the Assignment between Fleet Bank and Sovereign. "Moreover, Premier failed to produce either evidence of the endorsements required to establish its ownership of the Note or substitute evidence permitted under state law. To the contrary, Premier admitted at trial and oral argument that it had no direct evidence of the Assignment of the Note from Fleet to Sovereign. Absent such evidence, Premier has failed to establish title to the Note, and thus has no enforceable obligation against the debtor."* Gavin at page 32.

Like Gavin, Defendant has failed to produce evidence of the indorsements required to establish the chain of ownership of the Galiastros' Note, nor has it produced any physical Note whatsoever providing the authority for a purported assignment of the Galiastros Note to an assignee of Fremont, who has ceased operations and is in fact bankrupt. It is no wonder that Defendant steadfastly refuses to identify the "owner" of Ms. McKenna's Note and mortgage, or produce any evidence of the true undisclosed owner(s) of the bonds that theoretically are backed by collateral containing Ms. McKenna's mortgage loan.

### D. Ms. McKenna Lacks Adequate Protection From Loss From Another Party Seeking To Enforce Note

As discussed above, if Plaintiff's position is to "conveniently" claim that the Defendants' Note is suddenly "lost", under G.L. c. 106 § 3-309, Plaintiff **must** proffer proof that it was entitled to enforce Defendants' Note, and was in actual physical possession of Defendants' physical Note at the time the Note was "lost". Under G.L. c. 106 § 3-309, this court may not enter judgment against the Defendants (under a "lost note" theory) *"unless it finds that the person obligated to pay the instrument is adequately protected against loss that might occur due to a claim by another party seeking to enforce the instrument"*.

What evidence has been adduced that Plaintiff's physical Note was "negotiated" under Article 3 of the Uniform Commercial Code? As discussed Defendant seeks to deceive this court by asserting that <u>Wells Fargo Bank, N.A.</u> is still the "owner" of the McKenna loan, with the accompanying right to enforce the underlying security instrument. Defendant has not indicated Wells Fargo Home mortgage's role in this transaction. If it is seeking to foreclose, it lacks standing to do so, and if it is acting on behalf of an undisclosed principal it has not proffered any evidence of this either.

Massachusetts Courts have frequently spoken to the fact that where a mortgage is given to secure an underlying debt (such as here), the mortgagee **at most holds bare legal title** to the premises, **which is defeasible upon the borrower satisfying the underlying obligation**, *"Prior to breach of the statutory condition, see G.L. c. 183, § 20, the mortgagee holds bare legal*

*title to the property subject to defeasance on the mortgagor's performance of the obligation secured by the mortgage.* <u>Perry v. Miller</u>, 330 Mass. 261 (1953). <u>Pineo v. White</u>, 320 Mass. 487 *(1946). "It is only for the purpose of securing the debt that the mortgagee is to be considered owner of the property".* <u>Boston v. Quincy Mkt. Cold Storage & Warehouse Co.</u>, 312 Mass. 638, 649 (1942). <u>Krikorian v. Grafton Co-op. Bank</u>, 312 Mass. 272, 274, (1942). *"(A)ll the statutes upon the subject (i. e., mortgages) are to be so construed; and all rules of law, whether administered in law, or in equity, are to be so applied, as to carry these objects into effect. "* <u>Ewer v. Hobbs</u>, 5 Metc. 1,3 (1842). *"Literally, in Massachusetts, the granting of a mortgage vests title in the mortgagee to the land placed as security for the underlying debt. The mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains".* See <u>Vee Jay Realty Trust Co. v. DiCroce</u>, 360 Mass. 751, 753 (1972); <u>Negron v. Gordon</u>, 373 Mass. 199, 204 (1977). *"The purpose of vesting legal title in the mortgagee is to secure the debt owed by the mortgagor."* <u>Krikorian v. Grafton Co-op. Bank</u>, 312 Mass. 272, 274 (1942). <u>Negron v. Gordon</u>, supra 373 Mass. at 204. *Although a mortgage vests title. that title is defeasible and is an off-shoot of the underlying debt. "Neither the breach of the statutory condition nor a lapse of time subsequent thereto alters the rights of the parties in relation to the property."* 28 M.E. <u>Park & D. D. Park, Conveyancing</u>, § 351 (1968). <u>Goodwin v. Richardson</u>, 11 Mass. 469, 472 (1814). *"So long as it remains in possession, the mortgagor*

*is regarded as the real owner"*, <u>Way v. Mullett</u>, 143 Mass. 49 (1886), *"and it retains all incidents of ownership, not only as to all the world, but as to the mortgagee as well"* <u>Aragona v. Parrella</u>, 325 Mass. 583 (1950). Therefore, the $430,000.00 question Defendant needs to answer is; *where is the proof that Wells Fargo Bank, N.A. is still the owner of Ms. McKenna's Note, in order that it may enforce the power of sale contained within the contractual terms of Ms. McKenna's mortgage contract? Additionally, Defendant has steadfastly refused to disclose the "owner" of her Note and mortgage through written requests, and therefore she demands that Defendant make such disclosure here before this court under 15 U.S.C. 1641(f)(2).*

If Defendants position is to "conveniently" claim that the McKenna Note is suddenly "lost", under G.L. c. 106 § 3-309, Defendant must proffer proof that it was entitled to enforce the McKenna Note, and was in actual physical possession of the physical McKenna Note at the time the Note was "lost". Under G.L. c. 106 § 3-309, this court may not enter judgment against Ms. Matt(under a "lost note" theory) "unless it finds that the person obligated to pay the instrument is adequately protected against loss that might occur due to a claim by another party seeking to enforce the instrument".


**E. Ms. McKenna Preemptively Challenge the Signatures on any Note Produced by Defendants**

If Defendants produce the 'original' McKenna promissory Note, Ms. McKenna wishes to reserve the right to a forensic examination of the signatures on the purported Note produced. G.L. c. 106 § 3-308 (a) states that "In an action with respect to an instrument, the authenticity of, and the authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. Further, G.L. c. 106 § 3-308(a) states that "If the validity of the signature on an instrument is denied in the pleadings, the burden of establishing validity is on the person claiming validity". Ms. McKenna's examination would not merely be limited to whether her late husband's purported signatures were in fact forgeries, but additionally said examination would encompass whether in fact the purported "original" note was in fact merely a high quality physical reproduction of an Electronic Note.

## II. MS. MCKENNA'S RESPONSE TO DEFENDANT'S "DISCUSSION" OF DEFENDANT'S "STANDING"

Defendant's counsel makes the statement at page 4 of its Memorandum, *"It is Plaintiff McKenna that must have standing to bring this action, not Defendant Wells Fargo"* (again this court should take note of the use of the vague term "Wells Fargo". Apparently, Defendant's counsel seems to forget, or is purposely trying to misstate Plaintiff's intentions. Defendant's counsel conveniently fails to discuss the fact that his client is wrongfully seeking to bodily remove a recent widow and her child

from this home. As such, count one of Ms. McKenna's complaint requests relief by way of preliminary or permanent injunction. As reasons therefore, Ms. McKenna states that Defendant lacks standing to bring the foreclosure action as it is not a real party in interest under Federal Rules of Civil Procedure, Rule 17(a). Therefore Counts II and II of Ms. McKenna's complaint are relevant and are, at minimum in material dispute, and therefore dismissal at this stage would be inappropriate.

### III. BALANCE OF DEFENDANT'S ARGUMENTS AGAINST MS. MCKENNA'S WELL PLEADED FACTUAL STATEMENTS

#### A. Ms. McKenna's Rescission of the Mortgage Loan at Issue Before This Court - Count V of Ms. McKenna's Complaint

Ms. McKenna's complaint, at line 62, specifically recites that she is basing her procedural right to rescind the mortgage at issue before this court, on the fact that she is raising her extended right to rescind on the fact that she is raising this issue as a defense to mortgage foreclosure as a claim in "recoupment". Defendant's counsel chooses to purposely ignore this fact.

#### B. Ms. McKenna Is Not Procedurally Estopped From Raising Her Rescission Claim

Ms. McKenna specifically cites the holding in, In Re: Fidler, 210 B.R. 411 (Bankr.D.Mass. 1997). Under the Holding in Fidler, the Massachusetts Bankruptcy Court held that Massachusetts had opted out of the federal scheme regarding

rescission. Therefore the holding in <u>Beach v, Ocwen</u>, 523 U.S. 210 (1998) limiting the action in recoupment to three years under the Federal Truth In Lending Act is not applicable in this Commonwealth. The result of which is that Ms. McKenna is not limited by the statute of limitations attached to the offensive use of rescission, as she is using it defensively against foreclosure.

### C. Ms. McKenna Is Not Substantively Estopped From Raising Her Rescission Claim

Defendant's counsel cites <u>King v. Long Beach Mortgage Co.</u>, 568 F.3d 309, 310 (1st Cir. 2009), as standing for the proposition that a borrower need not receive two copies of the Notice of the Right To Cancel. <u>King</u>, involved a borrower's exercising of the rescission right under the **Federal Truth In Lending Act**, and also was specifically seeking to be enforced as against the Federal Deposit Insurance Corporation (FDIC). Clearly, Ms. McKenna rescinded her loan under the **Massachusetts Consumer Credit Cost Disclosure Act, G.L. c. 140D**. As such the citation of this case is off point.

Defendant's recitation that "title insurance is specifically excluded from the Finance Charge" results from Defendant's failure to fully comprehend 209 C.M.R. 32.04(3)(g). This regulation specifically states that the mentioned real estate fees will be excluded from the calculation of the finance charge,(including title insurance) ***if*** they are "***bona fide and reasonable***". Therefore the balance of Defendant's argument here

is meritless. At a minimum this is an issue that is now in dispute, and as such dismissal at this stage in inappropriate.

### D. Defendant's Intentional Misrepresentation to the McKenna's

Defendant correctly states the elements a Plaintiff must prove in order that it prevail on an intentional misrepresentation claim.

As discussed above, Defendant's claim that the charge for title insurance is "*lawful*" is subjectively misplaced. Due to Defendant's counsel's superficial reading of implementing regulation 209 C.M.R. 32.04(g), Defendant failed to consider that charges for title insurance must be "bona fide" and "reasonable". It is Ms. McKenna's contention that the purposeful overcharging for title insurance, was defacto **_not_** bona fide, **_nor_** "reasonable", and thus was **_not_** "legal".

Therefore, the McKenna's relied upon a false statement of a material fact, with knowledge thereof, for the purpose of inducing the McKenna's to undertake a mortgage **originated** by **Wells Fargo Bank, N.A.**.

### E. McKenna's G.L. c. 93A Claim Is Proper Procedurally, as Well As Substantively

As with most of Defendant's arguments, its response regarding G.L. c. 93A, either reflects its lack of knowledge of this area of the law, or it is merely engaged in "spinning" the law to inure to its benefit, where no such benefit exists. Once again, this is indicative of Defendant's counsel consistently

facing either unrepresented borrowers, or litigants unfamiliar with the nuances of Massachusetts foreclosure statutory law.

The Massachusetts Consumer Credit Cost Disclosure Act is codified within G.L. c. 140D. Ms. McKenna has specifically cited G.L. c. 140D § 10 as providing her the extended right to rescind her mortgage contract. **Therefore Ms. McKenna is clearly claiming that Defendant violated G.L. c. 140D.**

Defendant chooses to purposely *ignore* Defendant's complaint at line 70 including subsections (a)-(e). Specifically, at line 70 (e) Ms. McKenna clearly states that "Under G.L. c. 140D § 34, *any violation* of G.L. c. 140D, is an *automatic* violation of G.L. c. 93A. Plaintiff's counsel would like to kindly remind Defendant that the term "automatic" necessarily implies that no further action is required, and therefore Defendant's discussion of the necessity of a "written demand letter" under G.L. c. 93A § 9(3) is of no moment,

Defendant next makes the statement that Ms. McKenna has not set out sufficient facts to demonstrate entitlement of relief as against "Wells Fargo" under G.L. c. 93A. Yet again Ms. McKenna would like to point out the vague term "Wells Fargo" being used by Defendant's counsel, which under information and belief, is to purposefully obfuscate the distinction between Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage. Leaving aside this argument, Ms. McKenna would like to point to the conduct of Wells Fargo Bank, N.A. in the origination of her loan. It is Ms. McKenna's position that this entity purposely induced her into a higher fee mortgage than what was being represented to her. Further,

Defendant here, also under information and belief, is purposely obfuscating the identity of the true "owner" of the McKenna loan. Under information and belief, Defendant is relying upon the original mortgage recorded at origination of her loan. Ms. McKenna states that her loan is what is known as a "securitized mortgage" transaction, and as such, the originating lender is left "on record" at the County Registry of Deeds, while an off record assignment is being made to an undisclosed securitized trust.

As evidence of this fact, Ms. McKenna contacted **Wells Fargo Home Mortgage**, to ask as to who is the actual owner of her loan, she was verbally told that it was "C701-Nomura" Nomura is one of the largest entities involved in the mortgage securitization process. Ms. McKenna requested this information in writing, but was rebuffed in this request. As a result of the above, and under information and belief, Defendant is engaged in ongoing unfair deceptive acts as against Ms. McKenna.


### F. Plaintiff Meets The Standard For Injunctive Relief

Ms. McKenna will, as a matter of established law, suffer irreparable harm if this injunction is not issued. Plaintiff is likely to succeed on the merits of the complaint in this case, Wells Fargo Bank, N.A. also as matter of established law, will suffer no irreparable harm should this injunction issue


**WHEREFORE**, Ms. McKenna respectfully requests that this court DENY Defendant's Motion to Dismiss, as the claims raised in her complaint are at minimum in dispute, and in fact in error.

Respectfully Submitted,
Suzette McKenna
By Her Attorney


/s/Glenn F. Russell, Jr
Glenn F. Russell, Jr.
The Law Office of
Glenn F. Russell, Jr.
38 Rock Street, Suite 12
Fall River, MA 02720
(508) 324-4545
Dated:  September 27, 2010          BBO# 656914




## CERTIFICATE OF SERVICE

I, Glenn F. Russell, Jr., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and copies will be additionally served by electronic and regular mail upon the following this is the 27th day of September, 2010:


/s/Glenn F. Russell, Jr
Glenn F. Russell, Jr.

Morgan T. Nickerson
Nelson, Mullins Riley
& Scarborough, LLP
One Boston Place
Boston, MA 02108